# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BUILDING INDUSTRY ASSOCIATION OF
WASHINGTON; AIR AMERICA INC.;
BOA CONSTRUCTION CO.; COMPLETE
DESIGN INC.; AIREFCO INC.; CVH
INC.; ENTEK CORP.; FAMILY HOME
INVESTMENTS CORP.; SADLER
CONSTRUCTION INC.; TRACY
CONSTRUCTION CO.,
           *Plaintiffs-Appellants,*

    v.

WASHINGTON STATE BUILDING CODE
COUNCIL,
           *Defendant-Appellee,*

NW ENERGY COALITION; SIERRA
CLUB; WASHINGTON ENVIRONMENTAL
COUNCIL; NATURAL RESOURCES
DEFENSE COUNCIL,
  *Intervenor-Defendants-Appellees.*

No. 11-35207

D.C. No.
3:10-cv-05373-RJB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted
February 9, 2012—Seattle, Washington

Filed June 25, 2012

7493

Before: Mary M. Schroeder and Ronald M. Gould,
Circuit Judges, and Ralph R. Beistline,
Chief District Judge.*

Opinion by Judge Schroeder

---

*The Honorable Ralph R. Beistline, Chief United States District Judge for the District of Alaska, sitting by designation.

## COUNSEL

Timothy M. Harris, Tacoma, Washington, for plaintiffs-appellants Building Industry Association of Washington, et al.

Ann C. Essko, Assistant Attorney General, Olympia, Washington, for Washington State Building Code Council.

H. Thomas Byron, III, United States Department of Justice, Washington, D.C., for amicus curiae United States of America.

## OPINION

SCHROEDER, Circuit Judge:

The Energy Policy and Conservation Act of 1975 ("EPCA"), 42 U.S.C. § 6295 *et seq.*, as amended, establishes nationwide energy efficiency standards for certain residential home appliances, and expressly preempts state standards requiring greater efficiency than the federal standards. It nonetheless exempts from preemption state building codes promoting energy efficiency, so long as those codes meet certain statutory conditions. § 6297(f)(3).

This case is a challenge to the State of Washington's Building Code, *see* Wash. Admin. Code § 51-11-0100 *et seq.*, brought by the Building Industry Association of Washington ("BIAW"), along with individual builders and contractors. The impetus for this challenge is the State's 2009 requirement that new building construction meet heightened energy conservation goals. This is the first case at the appellate level to consider EPCA's preemption-exemption provision. Plaintiffs-Appellants ("Plaintiffs") argue that the Building Code does not satisfy EPCA's conditions for exemption. The district court, however, held that Washington had satisfied EPCA's conditions, and therefore was not preempted. We affirm.

To escape preemption, a state's building code must satisfy the seven conditions codified in 42 U.S.C. § 6297(f)(3). The two at issue here are § 6297(f)(3)(B) and (C). Under subsection (B), a state's building code cannot require a covered product—energy consuming fixtures such as water heaters and refrigerators—to be more efficient than the standards established by the United States Department of Energy ("DOE"). The State of Washington's Building Code requires builders to reduce a building's energy use by a certain amount, and provides a number of options from which a builder may choose how to meet that requirement. Some of the options involve the installation of products that have an efficiency that exceeds the federal standards. These options, according to the builders, also happen to be cheaper than the other options. The builders contend that they are therefore being "required" to use products that exceed the federal standards, in violation of subsection (B). We hold that a builder is not "required" to select an option, within the meaning of subsection (B), simply because there is an economic incentive to do so. Section 6297(f)(3)(B) is violated when the code requires a builder, as a matter of law, to select a particular product or option. The Supreme Court has recognized this to be what a requirement entails. *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 445 (2005) (rejecting a preemption challenge, and holding that the term "requirement" in a different statute means "a rule of law that must be obeyed"). Plaintiffs in this case are thus not "required" to choose the less expensive, more efficient option.

Plaintiffs' challenge under § 6297(f)(3)(C) of the federal law is more factual in nature. Subsection (C) contemplates that building codes will allow builders to meet energy efficiency objectives through a system of credits for implementing solutions that save on either energy use or energy cost. It provides that a building code must grant credits on the basis of how much each option reduces energy use or cost, without favoring particular products or methods. It requires that the credits be allowed on the basis of "one-for-one equivalent

energy use or equivalent cost." Plaintiffs argue that the Building Code here does not satisfy this condition, because they contend its credits are not granted on a one-for-one equivalent energy use basis. Their argument relies solely upon a BIAW member's declaration. The district court rejected the declaration after finding that the witness was not qualified as an expert to challenge the state's calculations of equivalent energy use savings produced by using particular products or building methods. We hold there was no abuse of discretion in disallowing that evidence.

The evidence that is in the record supports the district court's conclusion that the state-assigned credit values satisfy the "one-for-one equivalent energy use" requirement of subsection (C). The district court admitted the State's expert testimony and documentation because the court found the State's computer models for assigning credit values used sound data and methodology, and that they were reliably applied. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The district court properly held that Plaintiffs could not show that the Building Code violated subsection (C).

Plaintiffs do correctly note that even where the State gives two options the same credit, there may not be an exact match between the energy savings produced by each option. This is an inevitable result, however, when comparing methods that use different products to obtain an energy conservation goal. Some approximation is necessarily included in the concept of equivalence, as Congress and the district court have recognized. *See, e.g.*, S. Rep. No. 100-6 at 10 (1987) ("The Committee recognizes that in some cases, exact equivalency is not possible.").

We therefore hold that the Washington Building Code satisfies the conditions Congress established for enforcement of state and local building codes consistent with federal energy law and we affirm the judgment of the district court in favor of the State.

## BACKGROUND

**The Federal Regulatory Framework**

Congress enacted EPCA as a comprehensive federal regime regulating energy and water conservation standards for certain consumer appliances. Congress gave DOE primary responsibility for promulgating regulations prescribing a "minimum level of energy efficiency or a maximum quantity of energy use" for the covered consumer products. 42 U.S.C. § 6291(6)(A); *see* § 6295.

EPCA defines a "consumer product," in relevant part, as "any article . . . of a type—(A) which in operation consumes, or is designed to consume, energy or, with respect to showerheads, faucets, water closets, and urinals, water; and (B) which, to any significant extent, is distributed in commerce for personal use or consumption by individuals . . . ." § 6291(1). Consumer products covered by EPCA's energy-efficiency provisions are identified in § 6292, and include durable goods such as refrigerators, air conditioners, water heaters, furnaces, dishwashers, clothes washers and driers, kitchen ranges and ovens, faucets, and showerheads. § 6292(a). These covered consumer products are typically installed in new home construction.

As initially enacted in 1975, EPCA provided that federal energy efficiency standards be established for covered products, and it preempted all state "efficiency standard[s] or similar requirement[s]" for covered products. Energy Policy and Conservation Act of 1975, Pub. L. No. 94-163, sec. 327, 89 Stat. 871, 926-27. Congress modified the blanket preemption in 1987, when it amended EPCA to carve out an explicit exemption from preemption for certain efficiency standards in state and local building codes. *See* National Appliance Energy Conservation Act of 1987, Pub. L. No. 100-12, sec. 7, 101 Stat. 103, 117-22 (codified as amended at 42 U.S.C. § 6297). EPCA thus now expressly exempts from preemption any reg-

ulation or other requirement contained in a state or local building code for new construction concerning the energy efficiency or energy use of covered products, but only if the provisions of the code satisfy seven statutory conditions. 42 U.S.C. § 6297(f)(3). The conditions are as follows:

(A) The code permits a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective.

(B) The code does not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title, except that the required efficiency may exceed such standard up to the level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d) of this section.

(C) The credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such energy conservation standard established in or prescribed under section 6295 of this title or the efficiency level required in a State regulation referred to in subparagraph (B) is on a one-for-one equivalent energy use or equivalent cost basis.

(D) If the code uses one or more baseline building designs against which all submitted building designs are to be evaluated and such baseline building designs contain a covered product subject to an energy conservation standard established in or prescribed under section 6295 of this title, the baseline building designs are based on the efficiency level for such covered product which meets but does not exceed such standard or the efficiency level required

by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d) of this section.

(E) If the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds either standard or level referred to in subparagraph (D), there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard.

(F) The energy consumption or conservation objective is specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost).

(G) The estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is determined using the applicable test procedures prescribed under section 6293 of this title, except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under section 6293 of this title or other technically accurate documented procedure.

42 U.S.C. § 6297(f)(3)(A)-(G). As long as a state building code meets these conditions, the state does not need to peti-

tion for the DOE's approval to enforce its building code. *See* § 6297(f)(4)(A).

Behind the 1987 preemption exemption lies Congressional recognition that state and local building codes have a major impact on energy consumption. Buildings, and the fixtures installed in them, make up a large proportion of energy and electricity use throughout the country. *See 2010 Buildings Energy Data Book* \*1-2, 1-6 (DOE 2010), online at http:// buildingsdatabook.eren.doe.gov/docs/DataBooks/2010_ BEDB.pdf (nearly 40% of energy use, and over 70% of electricity use) (accessed June 18, 2012). Buildings and fixtures tend to have long lifespans, so choices made at the outset during construction are likely to have far-reaching future effects on energy consumption. It is for this reason that Congress, in EPCA, has permitted states some limited means of regulating these choices. Federal regulations promulgated under EPCA provide minimum standards for the energy efficiency of such fixtures, *see* 42 U.S.C. § 6295; 10 C.F.R. § 430.32, and the federal statute preempts state attempts to impose minimum standards greater than the federal law, *see* 42 U.S.C. § 6297(c). States thus cannot, for example, require that any water heater sold or installed in the state meet energy-efficiency requirements more stringent than federal requirements. States seeking to implement energy conservation goals through their building codes must therefore ensure that the code satisfies the conditions established in EPCA for exemption from federal preemption. There is no dispute that Washington's building code is "a State or local building code for new construction concerning the energy efficiency or energy use" of appliances covered by EPCA's efficiency regulations. § 6297(f)(3). If the code does not meet EPCA's conditions, it is preempted.

**The Washington State Building Code**

Washington's legislature has opted to use its regulatory police power to enact a statewide code for building construc-

tion to promote, inter alia, energy efficiency goals. The development of the code before us reveals the State's sensitivity to EPCA's conditions. The Washington legislature identified energy consumption patterns in new building construction as an area in which it could create incentives for energy efficiency, and enacted a regulatory regime that meets specific efficiency goals over the next two decades. The legislature explained that it enacted energy conservation mandates to balance "flexibility in building design" against "the broader goal of building zero fossil-fuel greenhouse gas emission homes and buildings by the year 2031." Rev. Code Wash. § 19.27A.020(2)(a); *see also id.* § 19.27A.130 ("Washington can spur its economy and assert its regional and national clean energy leadership by putting efficiency first.").

While the legislature has mandated the goals, it has delegated authority to Defendant-Appellee Washington State Building Code Council ("Council"), to promulgate and update the statewide building code. Rev. Code Wash. § 19.27A.045. The Council must review and may amend the state Building Code periodically, *id.*, and between 2013 and 2031 it will have to amend the Code progressively to implement the legislature's mandated goals, *id.* § 19.27A.160. The Building Code that will be effective in 2031 will have to achieve a "seventy percent reduction in annual net energy consumption" compared to the Building Code effective in 2006, the baseline year. § 19.27A.160(1).

The Council amended the Code effective in 2009 to implement a 15% reduction in new buildings' energy consumption, compared to the 2006 baseline. The 2009 amendments, a precursor to those expected to take effect in 2013, are the subject of Plaintiffs' challenge here.

In the 2009 Code, the Council offered builders three methods, termed "pathways," for achieving the 15% reduction in energy consumption. Each such pathway to compliance is codified under one of three chapters of the Code. *See* Wash.

Admin. Code §§ 51-11-0401 (Chapter 4); 51-11-0501 (Chapter 5), 51-11-0601 (Chapter 6). A builder who elects the Chapters 5 or 6 pathways will not fully achieve the 15% reduction in energy consumption. The Building Code therefore requires a builder electing Chapters 5 or 6 to earn one "credit" under Chapter 9, which provides alternative methods for further reducing energy consumption by the necessary amount. § 51-11-0900. As the Defendants explained to the district court, the options set forth in Chapter 9 address different ways of achieving more efficient residential building energy use, by addressing the "efficiency of a building's shell," or "efficiency of a home's heating equipment," or "efficiency of other energy consuming devices." The credit system in Chapter 9 is the subject of the preemption challenge in this case, because some of its provisions involve use of EPCA covered products.

Chapter 9 assesses a certain credit value to each option available to builders who elect the Chapters 5 or 6 pathways. Chapter 9 contains a menu of options, "Table 9-1," from which each builder can choose how best to secure its required one credit. Wash. Admin. Code § 51-11-0900. Some options are worth one credit, while others are worth half, one-and-a half, or two credits each. Large home construction is penalized, because if a builder constructs a home larger than 5000 square feet of floor area, one credit is deducted. *Id.* A builder must implement sufficient options in order both to cancel out the penalty, if applicable, and to earn one net credit.

The Council's 2009 proposed changes that added Chapter 9 were controversial from the beginning. Industry groups offered criticism during the period leading up to the Council's adoption of the revisions, and objected to what they perceived as coercion. In a letter to the Council in November 2009, for example, the Air Conditioning, Heating, and Refrigeration Institute said that unless the Council supplemented Table 9-1 with additional options, Chapter 9 "could indirectly force homebuilders to install high efficiency HVAC and water heat-

ing equipment" in order to earn the required credit. Other criticisms focused on the cost to builders of complying with Chapter 9. After the Council adopted the changes, the state Joint Administrative Rules Review Committee faulted it for providing what it considered an inadequate cost-benefit analysis. *See* Wash. Admin. Code § 51-11-0900 *note*. That Committee recommended that the effective date of the amendments be delayed. Washington's Governor, Christine Gregoire, took up the Committee's recommendation. Citing the importance of the construction industry to the recovery of the state's economy during a time of deep recession, the Governor asked the Council to delay implementing the amendments from July 2010 until April 2011. The Council filed an emergency rule delaying the effective date, but only until October 29, 2010. Emergency Rule, Wash. St. Reg. 10-13-114 (June 21, 2010). Plaintiffs determined litigation was necessary.

**This Litigation**

Plaintiffs filed this action in May 2010 in the Western District of Washington. In their complaint, Plaintiffs alleged their businesses would be harmed if the 2009 revisions to the Building Code were allowed to go into effect, because the revisions would increase costs of installing appliances and thereby reduce demand for new home construction. Plaintiffs sought declaratory and injunctive relief on their claim that the Building Code was expressly preempted by EPCA, and they argued it did not satisfy the statutory conditions that provide a safe harbor from preemption under § 6297(f)(3). Environmental groups supportive of the 2009 revisions moved to intervene on behalf of the Council. In July 2010, the district court granted a motion to intervene filed by the Northwest Energy Coalition, Sierra Club, Washington Environmental Council, and Natural Resources Defense Council.

Defendants and intervenors (collectively "Defendants") then filed a joint motion for summary judgment, arguing that

the Washington Building Code met all seven statutory conditions for exemption from preemption. The district court summarized the Defendants' position with respect to each of the seven conditions as follows:

> 1) the Washington Code offers builders numerous options to meet the overall 15% reduction and the 8% energy efficiency requirement, 2) the Washington Code does not expressly or effectively require efficiency levels beyond the federal minimum standards, 3) the Washington Code assigns credits that are even-handed and not unfairly weighted, 4) the Code does not require the use of single baseline building design, 5) the Code offers an evenly balanced range of options, 6) energy savings goal of the Washington Code is measured in energy use, and 7) the Code uses federal test procedures to measure energy use.

Plaintiffs cross-moved for summary judgment, arguing that Chapter 9 failed to satisfy four of the seven statutory conditions. *See* § 6297(f)(3)(B), (C), (E), (F). In addition to challenging compliance with conditions (B) and (C), they also argued before the district court that Chapter 9 failed conditions (E) and (F), but Plaintiffs do not pursue those latter challenges on appeal.

The district court disagreed with Plaintiffs and granted summary judgment to Defendants. All the parties agreed that Plaintiffs were challenging the enforceability of the Washington Building Code on the ground that it was preempted because it failed to satisfy the statutory conditions. There was no dispute that the Washington Building Code "concern[s] the energy efficiency or energy use of [EPCA] covered product[s]" and therefore must satisfy all seven conditions to avoid preemption. § 6297(f)(3). The district court found that the Building Code satisfied those conditions and thus was exempt from preemption. The court rejected Plaintiffs' argument con-

cerning subsection (B), noting that Chapter 9 did not require products "with higher efficiency than mandated by federal standards as the only way to comply with the Code." It also rejected Plaintiffs' argument concerning subsection (C), explaining that "[w]hile there is some disparity in credits, the EPCA does not require identical energy savings. . . . Plaintiffs have not shown that the variation is so great that the Code does not meet the requirements of factor (C)."

Plaintiffs timely appeal.

## DISCUSSION

This appeal solely concerns whether the Washington Building Code's provisions satisfy two of EPCA's statutory conditions to avoid preemption. Subsection (B) provides that the code must not require builders to install products more efficient than federal standards would require, while subsection (C) provides that where a building code grants credits for reducing energy use, the code must give credit in proportion to energy use savings, without favoring certain options over others. We turn first to subsection (B).

**Subsection B**

**[1]** Plaintiffs argue that the Building Code's Chapter 9 does not satisfy EPCA subsection (B), which provides in relevant part that, to survive preemption, the Building Code cannot "require that the covered product have an energy efficiency exceeding the applicable energy conservation standard" established under federal law. 42 U.S.C. § 6297(f)(3)(B). Several options under Chapter 9 call for higher efficiency covered products (options 1a, 2, 5a, and 5b), and the remaining options do not. Builders can choose. They do not have to use higher efficiency products.

Plaintiffs acknowledge that Chapter 9 does not legally mandate use of higher efficiency covered products. Their conten-

tion is, rather, that the other options are so costly that builders are economically coerced and hence "required" to select the higher efficiency options. Defendants counter that an economic incentive is not a requirement. We agree that allowing less expensive, more efficient options does not require builders to use more efficient products within the meaning of the federal statute. This is apparent from an analysis of the language of EPCA, as well as the Supreme Court's interpretation of similar language in the preemption clause of another environmental statute.

**[2]** Congress's use of the word "require" in the statutory text of § 6297(f)(3)(B) indicates it intended compulsion backed by force of law. The dictionary definition of the verb "require" is to "impose a compulsion or command upon (as a person) to do something; demand of (one) that something be done or some action taken; enjoin, command, or authoritatively insist (that someone do something)." Webster's Third New International Dictionary 1929 (1971). This definition leaves no room for the Plaintiffs' argument that cost considerations outside the Building Code itself force them to select higher efficiency options and hence "require" those options. A requirement would have to be in the Code. The Washington Building Code itself does not command, demand, or insist that builders select higher efficiency options. We thus must conclude that Chapter 9 satisfies subsection (B) in that it does not require such options.

Plaintiffs nevertheless point to language in the legislative history, in particular House Report 100-11, stating that the provisions of § 6297(f)(3) "are designed to ensure that performance-based codes cannot expressly or effectively" require installation of higher efficiency products. H.R. Rep. 100-11 at 26 (1987) . Plaintiffs argue that the House Report's reference to an "effective" requirement means Congress wanted to bar states from adopting building codes that exert even indirect economic pressure to install higher efficiency options. Congress was concerned, however, with the content

of a regulation that was within state or local control. The market costs of products fluctuate outside the control of those who promulgate the codes. Congress cannot preempt market costs. The fact that certain options may end up being less costly to builders than others does not mean the state is, expressly or effectively, requiring those options.

The state would effectively require higher efficiency products, in violation of subsection (B), if the code itself imposed a penalty for not using higher efficiency products. This is what a building code ordinance for the city of Albuquerque, New Mexico did. The federal district court for the District of New Mexico therefore granted a preliminary injunction against enforcing that ordinance. *See Air Conditioning, Heating, and Refrigeration Institute v. City of Albuquerque*, 2008 WL 5586316 (D. N.M. 2008). That court held, in relevant part, that the ordinance did not satisfy EPCA's subsection (B), because the ordinance itself had created a situation in which the builder had no choice. Albuquerque's ordinance imposed costs, as a matter of law, on builders who installed certain covered products meeting federal standards, by requiring the builder to install additional products that would compensate for not using a higher efficiency product. *Id.* at *2. As the court explained, "if products at the federal efficiency standard are used, a building owner must make other modifications to the home to increase its energy efficiency." *Id.* at *9. The Albuquerque ordinance thus effectively required use of higher efficiency products by imposing a penalty through the code itself.

**[3]** Here, by contrast, the Washington Building Code itself imposes no additional costs on builders. The district court noted that there are "substantial differences" between the Washington Building Code and Albuquerque's ordinance. It correctly rejected the Plaintiffs' argument concerning subsection (B), explaining that the Washington Building Code created no penalties, and did not require higher efficiency products as the "only way to comply with the code." We hold

the Washington Building Code complies with subsection (B) because it does not create any penalty or legal compulsion to use higher efficiency products.

This conclusion draws support from the Supreme Court's interpretation of another statutory preemption clause intended to prevent states from creating higher, or additional, requirements than those created by federal law. In *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431 (2005), the Supreme Court considered the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). FIFRA contained a preemption provision mandating that state law not "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." 7 U.S.C. § 136v(b).

The issue in *Bates* was whether that provision preempted state common law claims for strict liability, negligence, fraud, and breach of warranty. The Fifth Circuit had held that the state tort claims were preempted on the theory that a jury verdict in favor of the plaintiffs would create an incentive for the manufacturer to change its label in ways that were in addition to, or different from, those required under FIFRA. *See Bates*, 544 U.S. at 436 (citing *Dow Agrosciences LLC v. Bates*, 332 F.3d 323 (5th Cir. 2003)). The Supreme Court reversed, rejecting the Circuit's conclusion that an incentive for change constituted a "requirement." The Court said that an event like a jury verdict might induce a label change, but "[t]he Court of Appeals was . . . quite wrong when it assumed that any event, such as a jury verdict, that might 'induce' a pesticide manufacturer to change its label should be viewed as a requirement." *Id*. at 443. The Court concluded that common law rules governing strict products liability, negligence, and fraud, may affect the choices that manufacturers make, but are not state requirements for labeling or packaging, and are thus not preempted. *Id*. at 444. Even though verdicts on state tort claims might create economic incentives to reach the outcome otherwise forbidden, the Court explained, those incentives do

not "require[ ] that manufacturers label or package their products in any particular way." *Id*. *Bates* effectively forecloses Plaintiff's argument in this case.

**Subsection C**

[4] Plaintiffs' challenge to the Washington Building Code's compliance with § 6297(f)(3)(C) is more factual. That subsection of the federal law authorizes a state or local building code to allow builders to meet energy efficiency objectives through a system of credits for alternative methods to reduce energy use. Subsection (C) provides that where two options reduce energy use by equivalent amounts, the building code must provide credits to those options on a "one-for-one" basis. § 6297(f)(3)(C). To survive preemption, Washington's Building Code must therefore give credits in proportion to energy use savings without favoring particular products or methods.

Plaintiffs argued to the district court that Chapter 9 does not satisfy subsection (C), because the state has assigned the same value to several options that do not reduce energy use by equivalent amounts. In support of their motion for summary judgment, Plaintiffs offered a declaration purporting to show that the state had assigned credit values that were incorrect or not equivalent. Ted Clifton, a builder affiliated with one of the Plaintiff corporations, submitted the declaration stating his conclusion that options in Chapter 9 would reduce energy consumption by amounts other than the amounts the state had assigned. Although the declaration was purportedly based on Clifton's experience as a builder, it did not describe how he reached his conclusions. He opined that the computer models the State used to estimate and assign credit values were "inconsisten[t]," used "rough approximations and rounding," and were based on "flawed" assumptions.

Defendants, by contrast, offered evidence to show that the Council used computer models to assign credit values propor-

tional to the equivalent amount by which each Chapter 9 option would reduce the building's energy use. The Council explained it used a model developed by Dave Baylon, an energy efficiency expert with an energy consulting firm, to estimate how a building's energy use will change when different components and products are installed. According to the State's declarations, that model, known as SEEM, has been used since 1982 by entities such as the Northwest Power and Conservation Council ("NWPCC"), and is described as "the industry standard."

To explain the use of the model, Defendants provided the declaration of Tom Eckman, manager of conservation resources at NWPCC and chair of the Regional Technical Forum. He described the latter organization as having been "established by the NWPCC at the request of Congress to develop standardized methods for verifying conservation savings." The State uses computer simulations, Eckman explained, because "it is not practical to build homes with every potential combination of energy efficiency measures being considered for code adoption in order to test their effect on energy use." The SEEM model "simulat[es] the impact on energy use of each of the efficiency options under consideration across a range of home sizes and designs that are representative of those being constructed in Washington state." According to Eckman, the SEEM model allows the Council to determine how installing different components and products in the new building will affect its energy use in many situations. It therefore also allows the State to isolate the energy-reducing effect of any given component, and assign a credit value to that component.

**[5]** The district court, in rejecting Clifton's declaration, ruled correctly that Clifton had established no qualifications to provide expert testimony about the accuracy of the SEEM model. The party offering expert testimony has the burden of establishing its admissibility. *United States v. 87.98 Acres of Land More or Less in the County of Merced*, 530 F.3d 899,

904 (9th Cir. 2008). Plaintiffs do not seriously contend on appeal that the district court should have admitted Clifton's declaration. Clifton offered unsupported assertions that the computer models were wrong, but Plaintiffs offered no data forming the basis for Clifton's assumptions or conclusions. They made no attempt to show his testimony was scientifically or otherwise reliable. *See United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010). There was no abuse of discretion in rejecting the declaration.

**[6]** Defendants, on the other hand, offered expert declarations that explained the quantitative computer models used in assigning credit values. The district court considered the Defendants' evidence after it found Eckman qualified to offer expert opinion regarding energy efficiency modeling. It also concluded that the data that went into the SEEM model was shown to be accurate. On the basis of the Eckman evidence, the district court found that the credit of each option is weighted "based on the energy use saved by each option on average." This finding is supported by the expert declarations and is not clearly erroneous.

Plaintiffs are thus left to quibble over whether the credit values for Chapter 9's options are sufficiently proportional to the amount by which the State's numbers indicate they reduce energy use. Plaintiffs, for example, take issue with the Code's assigning the same credit value, one credit, to a geothermal heat pump (option 1b) and a system for ventilating and preventing leakage of climate-controlled air (option 4a). The State has estimated that, on average, the one-credit options in Chapter 9 reduce a building's energy use by eight percent. Option 1b reduces energy use by six percent, a figure below the average, and option 4a reduces energy use by about ten percent, a figure above the average. Plaintiffs appear to contend this is too much variation to satisfy the statute's requirement that credits be awarded on a "one-for-one" basis.

Any credit-based system that involves comparing different methods of reducing energy, however, may seem like compar-

ing apples and oranges. Option 1b, geothermal heat pump, uses the ground to help heat or cool the house in different seasons. Option 4a, ventilator system, supplies an otherwise well-sealed house with fresh air, while avoiding using energy unnecessarily to maintain internal climate control. It is unsurprising that these methods do not produce identical results in energy savings.

Indeed, in EPCA, Congress recognized that some variation will be inevitable, for it speaks in terms of equivalencies. The statute in subsection (C) requires that the credits be awarded "one-for-one" where different options bring about savings in "equivalent energy use or equivalent cost." § 6297(f)(3)(C). The covered consumer products differ in many ways, including in the kind of energy used—such as gas, electricity, or geothermal heat. Therefore reductions of energy consumption in different contexts can be compared meaningfully only through quantitative estimates. By requiring credits to be awarded for equivalent energy savings on a "one-for-one" basis, Congress intended state and local building codes to assign credit values proportional to the amount of energy saved, without regard to the method chosen. Plaintiffs suggest, implausibly, that Congress intended a perfect correspondence between energy use saved and credit value awarded. Yet Congress recognized there are different methods and measures, and it did not want codes to assign credit values disproportionately, thereby influencing builders' choices where options reduced energy consumption by equivalent amounts. The Senate Committee Report thus explained that credits are to be given, "to the greatest degree possible, one-for-one equivalency between the energy efficiency of these differing measures." S. Rep. No. 100-6 at 10.

[7] The district court correctly ruled that the credit values in Chapter 9 are closely proportional to the average reduction in equivalent energy use across a variety of climatic and other environmental situations. Certain installation options may result in greater energy savings than other options in certain

climates or certain size buildings. In requiring that credits be awarded on a one-for-one equivalent energy use basis, Congress intended not mathematical perfection, but rather preventing the building code from discriminating between products and building methods. Chapter 9 of the 2009 Washington Building Code achieves this objective by awarding credits for average equivalent energy use for each option in different use situations. Chapter 9 of the Washington Building Code thus satisfies EPCA subsection (C).

## CONCLUSION

[8]  The district court did not err in granting summary judgment to Defendants. The Washington Building Code satisfies the conditions Congress set forth in EPCA for exemption from federal preemption.

**AFFIRMED**.